1
2
3
4                    UNITED STATES DISTRICT COURT
5                    EASTERN DISTRICT OF WASHINGTON
6
7    JERRY CORRAL,                          No. 1:15-CV-03215-JTR
8                  Plaintiff,
                                            ORDER GRANTING, IN PART,
9                                           PLAINTIFF'S MOTION FOR
10             v.                           SUMMARY JUDGMENT
11   CAROLYN W. COLVIN,
12   Commissioner of Social Security,
13                  Defendant.
14

15        **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

16   No. 18, 19.  Attorney D. James Tree represents Jerry Corral (Plaintiff); Special

17   Assistant United States Attorney Richard M. Rodriguez represents the

18   Commissioner of Social Security (Defendant).  The parties have consented to

19   proceed before a magistrate judge.  ECF No. 4.  After reviewing the administrative

20   record and briefs filed by the parties, the Court **GRANTS**, in part, Plaintiff's

21   Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary

22   Judgment.

23                              **JURISDICTION**

24        Plaintiff filed an application for Disability Insurance Benefits on November

25   29, 2006, alleging disability since August 8, 2005, due to a closed head injury,

26   back/neck pain, headaches, hearing loss, anxiety, high blood pressure, and memory

27   loss.  Tr. 204-209, 237, 240.  The application was denied initially and upon

28   reconsideration.  Tr. 119-121, 123-124.  Administrative Law Judge (ALJ) W.

Howard O'Bryan, Jr., held a hearing on July 8, 2009, and heard testimony from Plaintiff. Tr. 53-65. ALJ O'Bryan issued an unfavorable decision on October 5, 2009. Tr. 104-113. The Appeals Council remanded the case back to the ALJ on February 10, 2011. Tr. 114-118. ALJ Riley Atkins held a second hearing on May 24, 2012, and heard testimony from Plaintiff and vocational expert Amber Lee Rock. Tr. 66-98. ALJ Atkins issued an unfavorable decision on June 20, 2012. Tr. 12-27. The Appeals Council denied review on April 11, 2013. Tr. 1-6. Plaintiff filed a complaint in this Court on May 24, 2013. Tr. 1929-1930. On July 10, 2014, the Honorable Judge Fred Van Sickle issued an order granting Plaintiff's motion for summary judgment and remanding the case to the Commissioner for additional proceedings. Tr. 1933-1950. ALJ Ilene Sloan then held a third hearing on September 28, 2015, and heard testimony from vocational expert William Weiss and medical expert Nancy Winfrey, Ph.D. Tr. 1860-1891. ALJ Sloan issued an unfavorable decision on October 15, 2015. Tr. 1824-1850. The ALJ's October 15, 2015, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.984. Plaintiff filed this action for judicial review on December 24, 2015. ECF No. 1, 7.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was forty-five years old at the alleged date of onset. Tr. 204. Plaintiff completed the twelfth grade in 1978. Tr. 247. Plaintiff's work history includes a community coordinator job at a funeral home, work as a health care driver, a program coordinator, a security officer position, and work in marketing. Tr. 242. Plaintiff reported he stopped working due to his condition resulting from a motor vehicle accident on August 8, 2005. Tr. 241, 477.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent them him engaging in his previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant

cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 20, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant time period: from Plaintiff's alleged date of onset, August 8, 2005, through his date last insured, December 31, 2010. Tr. 1827.

At step two, the ALJ determined Plaintiff had the following severe impairments through the date last insured of December 31, 2010: degenerative changes of the spine; post-concussion syndrome; cognitive disorder due to post-concussion syndrome; affective disorder (depressive disorder NOS vs. adjustment disorder, with anxiety and depression); pain disorder with both psychological and medical factors; personality disorder; and malingering. Tr. 1827.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 1828.

At step four, the ALJ assessed Plaintiff's residual functional capacity through the date last insured and determined he could perform a range of light work with normal breaks and the following limitations:

> The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch, and crawl. The claimant needed to avoid concentrated exposure to

hazards.  The claimant was able to understand, remember, and carry out simple tasks.  The claimant could perform work where contact with the general public was not an essential element of any task; however, occasional, incidental contact was not precluded.

Tr. 1830.  The ALJ concluded that Plaintiff was not able to perform his past relevant work through the date last insured.  Tr. 1848.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of basket filler, assembler, and bottle line attendant.  Tr. 1849.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date, August 8, 2005, through the date last insured, December 31, 2010.  Tr. 1849.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly weigh medical opinions and (2) relying on reasons previously rejected by the district court for finding Plaintiff less than fully credible.

## DISCUSSION

**A.    Medical Opinions**

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Likewise, the ALJ

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 5

should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.2d at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Kenneth Muscatel, Ph.D.

Plaintiff challenges the ALJ's determination giving Dr. Muscatel's 2007 opinion less weight than his 2008 opinion. ECF No. 18 at 13-14.

Dr. Muscatel completed two evaluations of Plaintiff. The first examination occurred in April of 2007. Tr. 1188-1201. Dr. Muscatel diagnosed Plaintiff with a cognitive disorder with a traumatic brain injury and depression, depressive disorder, and somatization disorder. Tr. 1201. Dr. Muscatel found Plaintiff had very significant difficulties in verbal memory, processing speed, attentional

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 6

efficiency and resistance to distraction.  Tr. 1199.  His intellectual skills were in the borderline range and his problem solving skills were mildly impaired.  *Id*.  Dr. Muscatel stated the following:

> His job options are limited due to his cognitive, academic and intellectual deficiencies.  His language skills, including verbal fluency, articulation skills, naming and other expressive verbal skills represent a barrier as well.  He probably could work in a routine environment that was within his physical capacities but his attentional efficiency is substantially reduced and would represent an issue for many jobs.

Tr. 1200.

The ALJ gave "some weight" to Dr. Muscatel's opinion, stating "I agree that, given the claimant's cognitive deficits, the claimant could perform simple, routine work, but disagree that his attentional deficits would limit his ability to perform such tasks."  Tr. 1842.  The ALJ reasoned that there was evidence of uneven effort during testing, suggesting that the overall results might underestimate his true abilities.  *Id*.  Plaintiff argues that since this Court had already considered this issue of Plaintiff's "uneven" effort in reference to Dr. Muscatel's 2007 opinion, law of the case doctrine applies and this Court was bound by its prior determination.  ECF No. 18 at 13-14.

The law of the case doctrine applies in the Social Security context.  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  Under the law of the case doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.  *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir. 1990).  The doctrine is primarily concerned with efficiency and should not be applied when the evidence on remand is substantially different.  *Stacy*, 825 F.3d at 567.

Here, this Court previously held that Plaintiff's "uneven" effort to one task during a portion of the testing was not substantial evidence to support the former

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 7

ALJ's determination that Plaintiff's overall effort on the testing was unreliable.  Tr. 1940.  Plaintiff is correct that ALJ Sloan's June 2012 decision used the same reason to reject Dr. Muscatel's opinion.  However, upon remand, ALJ Sloan was not tasked with crediting Dr. Muscatel's opinion as true, but with reweighing all the medical opinions in the file.  Tr. 1950.  Also, ALJ Sloan had additional evidence that was not available to the prior ALJ or at the time of this Court's prior determination.  Dr. Muscatel's 2008 opinion was available on remand and reviewed by ALJ Sloan in making her determination.  Tr. 31-34, 1941, 1854-1859.  While Dr. Muscatel's 2008 opinion was summarized in Dr. Brown's evaluation, the Court acknowledged that its weight was not considered.  Tr. 1941.

Dr. Mucatel's second opinion took place on April 11, 2008.  Tr. 2244-2259.  He diagnosed Plaintiff with depressive disorder, rule out malingering, rule out somatization disorder with prominent pain focus, rule out cognitive disorder, NOS with possible mild sequelae.  Tr. 2259.  He stated the following:

> The current results again indicate that the worker is exhibiting highly impaired cognitive skills, but he was not giving anything like an adequate effort on this testing battery.  Comparing these results with the examination I conducted on 4-30-07 revealed much poorer results across the board.  His effort testing on the prior examination was much better, indicating that the better results 4-30-07 were due to a better effort on his part.  Those results were more representative of his neurocognitive skills and abilities that day but the current results are not.

Tr. 2257-2258.  He additionally stated that "[t]hese results are neither representative nor helpful in determining his current status," and that "these results do not support a valid picture of his current functioning."  Tr. 2259.  Dr. Mucatel gave no functional limitations.  ALJ Sloan gave Dr. Mucatel's opinion "great weight."  Tr. 1843.

///

///

Because ALJ Sloan was tasked with reweighing all the medical opinions and had both of Dr. Mucatel's evaluations available to review upon remand, this Court will not apply the law of the case doctrine.  However, this Court's prior decision was accurate even in light of the new evidence.  In the 2007 evaluation, Dr. Muscatel acknowledged that one task during a portion of the test was accomplished with uneven effort.  Tr. 1200.  However, Dr. Muscatel did not appear to question Plaintiff's overall effort.  *Id*.  Additionally, the record consistently shows that when there is no significant lack of effort noted in testing, Plaintiff's test scores are higher.  *See* Tr. 1651-1654 (evaluation by Dr. Drew in which Plaintiff's effort was not questioned and his intelligence testing revealed borderline scores); Tr. 1271-1277 (Dr. Muscatel's 2007 opinion in which Plaintiff's effort was not significantly questioned and his intelligence testing revealed borderline scores); Tr. 1727 (evaluation by Dr. Duvall in which Plaintiff's effort was deemed poor and his intelligence testing revealed extremely low scores); Tr. 2252- 2257 (Dr. Muscatel's 2008 evaluation in which Plaintiff's effort was questioned and his intelligence testing revealed extremely low results).  Since higher test scores correlate with good effort and lower test scores correlate with poor effort, the ALJ's determination giving greater weight to the opinions stemming from evaluations in which Plaintiff set forth poor effort is in error as these evaluations are not an accurate representation of Plaintiff's limitation.  As such, similar to this Court's prior determination, the ALJ failed to provide a legally sufficient reason to support her rejection of Dr. Muscatel's 2007 opinion.

Despite this being the second finding by this Court that the ALJ failed to properly address Dr. Muscatel's 2007 opinion, the record fails to include a vocational expert opinion that a residual functional capacity drawn from Dr. Muscatel's 2007 opinion resulted in an inability to perform work.  Therefore, remand for additional proceedings will be necessary in this case.

///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 9

### 2.    Richard H. Drew, Ph.D.

Plaintiff challenges the ALJ's determination giving Dr. Drew's opinion lesser weight then the opinions of Dr. Muscatel in 2008, Dr. Duvall, Dr. Palmatier, and Dr. Clark.  ECF No. 18 at 15-16.

Dr. Drew performed a neuropsychological evaluation on November 5, 2008.  Tr. 1621-1631.  Dr. Drew diagnosed Plaintiff with cognitive disorder due to post concussion syndrome with symptoms including depression and somatic focus.  Tr. 1629.  He reviewed three neuropsychological evaluations, including the two performed by Dr. Muscatel and the one performed by Jane Thompson, Ph.D.  Tr. 1621-1622, 1629.  He concluded that Dr. Muscatel's 2008 opinion was an outlier and that there was no way for Plaintiff to feign consistently over three different neuropsychological evaluations spaced out over a year, stating that "[o]ne of the hallmarks of malingering is inconsistency."  Tr. 1629.  Dr. Drew stated that there was no problem with a lack of effort during his evaluation and that the residual deficits remain.  Tr. 1629.  Dr. Drew opined that Plaintiff would require additional treatment of at least six months before being able to return to competitive employment.  Tr. 1630.

ALJ Sloan agreed with Dr. Drew that Dr. Muscatel's 2008 opinion did not completely negate the prior evidence that Plaintiff developed a cognitive disorder following the 2005 motor vehicle accident, but considered Dr. Drew's opinion as to the severity of Plaintiff's cognitive disorder to be unreliable because Dr. Duvall's evaluation showed Plaintiff was malingering, Dr. Palmatier's treatment notes documented instances of symptoms magnification, speech therapy notes showed only mild to moderate deficits in memory and concentration, Dr. Clark reported that Plaintiff had inconsistencies between his reported symptoms and objective findings, and Dr. Winfrey concluded Plaintiff was a malingerer.  Tr. 1844.

///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 10

1    While there is evidence in the file supporting a finding of malingering, there
2    is no evidence that Plaintiff was malingering during Dr. Drew's evaluation.
3    Therefore, the fact that other providers found Plaintiff's effort as questionable on
4    their own evaluations is not evidence that Plaintiff failed to provide adequate effort
5    on Dr. Drew's evaluation.  In fact, substantial evidence supports the opposite
6    conclusion:  Plaintiff gave good effort on Dr. Drew's evaluation.  Tr. 1628.  The
7    Ninth Circuit has held that malingering can be evidence that a claimant is being
8    less than fully credible concerning his symptom reports.  *Smolen v. Chater*, 80 F.3d
9    1273, 1281 (9th Cir. 1996).  However, there is no indication that the ALJ found Dr.
10   Drew's evaluation was based on Plaintiff's self-reports.  Instead, the ALJ
11   recognizes that Dr. Drew reviewed other neuropsychological evaluations in
12   addition to administering his own.  Tr. 1844.  As such, the ALJ failed to provide a
13   legally sufficient reason for giving Dr. Drew's opinion lesser weight.

14       Even if Dr. Drew's opinion that Plaintiff was not able to return to work and
15   would need additional treatment to be able to try to return to work, Tr. 1630, were
16   given controlling weight, there would still be a need to determine whether
17   Plaintiff's impairments improved with treatment and if so, when those
18   improvements resulted in the ability to return to substantial gainful activity.  As
19   such, this Court deems the most appropriate means to address the ALJ's error is to
20   remand this case for further proceedings.

21       **3.    Ronald D. Duvall, Ph.D.**

22       Plaintiff challenges the ALJ's determination giving "significant weight" to
23   the opinion of Dr. Duvall.  ECF No. 18 at 17-18.

24       Dr. Duvall completed a neuropsychological screening on July 14, 2011.  Tr.
25   1722-1734.  Dr. Duvall determined that the results from the testing administered as
26   part of the screening were not credible, stating it was "obvious that he attempted to
27   portray himself as more cognitively damaged than merited by his injury."  Tr.
28   1730.  Dr. Duvall opined that Plaintiff had no psychological limitations, because

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 11

there was "no evidence of serious psychiatric disorder in the interview or testing." Tr. 1732-1734.  The ALJ gave this opinion "significant weight," stating that while the report "was issued after the date last insured, his observations nonetheless are consistent with the credibility concerns expressed by other examiners and providers prior to this period."  Tr. 1847.

Here, the ALJ's determination is sufficient to support a credibility determination, but it is not sufficient to support a residual functional capacity determination.  Once again, the ALJ gave controlling weight to opinions in which Plaintiff's effort called the test results into question while ignoring those evaluations with higher scores when Plaintiff's effort was not called into question. Dr. Duvall determined Plaintiff's test scores were unreliable and therefore opined that there was no evidence of a serious psychiatric disorder on testing.  Tr. 1730, 1733.  Unreliable test scores do not represent a lack of impairment or a lack of limitation.  They simply represent an unreliable score.

Furthermore, this Court had already determined that Dr. Duvall's experience with Plaintiff was not the most accurate representation of Plaintiff's performance due to the hostility expressed during the examination.  Tr. 1945.  Upon remand, the ALJ will readdress Dr. Duvall's opinion in light of evidence from other evaluators regarding Plaintiff's limitations that were present when he was putting forth good effort on neuropsychological testing.

### 4.    Patricia Harris Brown, Psy.D.

Plaintiff challenges the ALJ's determination that Dr. Brown's opinion was entitled to lesser weight than that of Dr. Duvall.  ECF No. 18 at 16-17.

Dr. Brown began treating Plaintiff in April of 2011 and treated Plaintiff through April of 2012.  Tr. 1752-1753, 1765-1766.  On August 1, 2011, Dr. Brown completed a Mental Residual Functional Capacity Assessment opining that

///

///

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 12

Plaintiff had marked[1] limitations in all areas of understanding and memory, five out of eight areas of sustained concentration and pace, and two out of four areas of adaptation.  Tr. 1740-1742.  Additionally, Dr. Brown opined that Plaintiff had a severe[2] limitation in the ability to maintain attention and concentration for extended periods and a moderate[3] limitation in two out of eight areas of sustained concentration and pace, one out of five areas in social interaction, and two out of four areas in adaptation.  *Id*.

The ALJ gave Dr. Brown's opinion "little weight" because (1) Dr. Brown's treatment of Plaintiff started after the date last insured, (2) Dr. Brown never administered any testing, and (3) Dr. Brown relied heavily on Plaintiff's self-reports.  Tr. 1845.

Since this case is being remanded for the ALJ to readdress the above medical opinions, the Court will not address whether the ALJ's reasons were legally sufficient to give Dr. Brown's opinion lessor weight.  On remand, the ALJ shall additionally reevaluate Dr. Brown's opinion.

**B.    Plaintiff's Symptom Testimony**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 18 at 18-20.

///

---

[1]A marked limitation was defined as a "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work day."  Tr. 1740.

[2]A severe limitation was defined as an "[i]nability to perform one or more basic work-related activities."  Tr. 1740.

[3]A moderate limitation was defined as a "[s]ignificant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day."  Tr. 1740.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's statements regarding limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary to determine if they are consistent with the record as a whole in accord with S.S.R. 16-3p.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 14

disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-1180 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly weigh the medical opinions in the file and, in light of the new medical analysis, make a new determination regarding Plaintiff's subjective complaints.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED, IN PART**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED February 6, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE